```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                   SOUTHERN DIVISION


GLEN TAYLOR, AIS #127254         *
                                 *
     Plaintiff,                  *
                                 *
vs.                              *   CIVIL ACTION NO.11-00027-KD-B
                                 *
                                 *
LT. GANDY, et al.,               *
                                 *
     Defendants.                 *
```

**REPORT AND RECOMMENDATION**

Plaintiff Glen Taylor, an Alabama prison inmate proceeding pro se and in forma pauperis, filed the instant action under 42 U.S.C. § 1983[1]. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendants' Motion for Summary Judgment (Docs. 21, 22, 23, 31, 32). Upon careful review, the undersigned finds that the motion has been fully briefed and is ripe for resolution, and that no evidentiary hearing is necessary as the record is fully developed.[2] For the reasons stated below, the undersigned

---

[1] Plaintiff's original Complaint (Doc. 1) was filed on an outdated form. Thus, he was directed to refile on the current form. (Doc. 3). Pursuant to the Court's directive, Plaintiff filed the instant Complaint on the requisite form. (Doc. 4).

[2] Because the record is adequate to resolve Defendants' Motion for Summary Judgment, Plaintiff's Motion for an Evidentiary Hearing (Doc. 27) is **DENIED**.

1

recommends that Defendants' Motion for Summary Judgment be **GRANTED**.

### SUMMARY OF ALLEGATIONS

Plaintiff Glen Taylor is an inmate at Fountain Correctional Facility where he is serving a life sentence. On January 13, 2011, Taylor filed the instant action against Defendants Lieutenant Gandy, Sargent Richardson, and Officer Abbington, who were all employed at the Fountain Correctional Facility during the time relevant to this action. (Doc. 1). Plaintiff also named as Defendants A. Debose, Sargent Bonner, Sargent Jackson and Lieutenant Ruffin, who are employed at the Bullock facility, which is located in the Middle District of Alabama. During the screening of Plaintiff's Complaint, as required under 28 U.S.C. § 1915(e)(2)(B), Plaintiff's claims against A. Debose, Bonner, Jackson and Ruffin were dismissed without prejudice for improper venue because those individuals are located in the Middle District, and Plaintiff's claims against them allegedly arose in the Middle District. (Docs. 13, 14). Additionally, Plaintiff's claims alleging unlawful deprivation of snacks without due process, deprivation of access to the courts, and the denial of a grievance system were dismissed as frivolous. (Docs. 13, 14).

In Plaintiff's remaining two claims, he alleges that Defendants Gandy, Richardson, and Abbington "forced Plaintiff to

2

submit to a haircut by threat of force using verbal and physical intimidation," and that Defendant Abbington "ordered [Plaintiff] to get a haircut when there are no DOC rules that require an inmate to comply." (Doc. 4, at 4, 8, 9). Plaintiff contends that in forcing him to get a haircut, Defendants deprived him of due process and subjected him to cruel and unusual punishment. (Id.).

Defendants filed Answers, Special Reports and the sworn affidavits of Defendants Gandy, Abbington and Richardson in response to Plaintiff's Complaint. (Docs. 21, 22, 23, 23-1, 23-2, 32, Exs. A, E, 33, 34). In their filings, Defendants deny Plaintiff's allegations and assert the defenses of sovereign, qualified, and absolute immunity.[3] (Docs. 21, 22, 23, 31, 32).

---

[3] As state officials, Defendants are absolutely immune from suit for damages in their official capacities. See Harbert Int'l v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (opining state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). Moreover, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). In determining whether qualified immunity is appropriate in a given case, "[t]he court must first ask the threshold question whether the facts alleged, taken in the light most favorable to the Plaintiffs, show that the government official's conduct violated a constitutional right." Dalrymple, 334 F.3d at 995 (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Having found herein that Plaintiff's allegations do not establish a

According to Defendants, on the day in question, Defendant Abbington advised Plaintiff to get a haircut, and Plaintiff responded that he was not going to get a haircut. Thus, Defendant Gandy instructed Defendant Abbington to escort Plaintiff to the shift office, where Defendant Gandy advised Plaintiff that his hair was too long (because it was past his ears and his sideburns went past his ear lopes), and that if Plaintiff did not cut it, he would be placed in segregation, and an inmate would cut his hair (Doc. 23-2, 33, 34). In response, Plaintiff left the shift office and had his hair cut by another inmate. According to Defendants, Regulation 102 of the Handbook requires hair to be off the neck and ears, and requires that sideburns be no lower than mid ear. (Id.).

In an Order dated March 6, 2012, Defendants' Answers and Special Reports were converted into a Motion for Summary Judgment, and the parties were provided notice and an opportunity to submit briefs and other materials in support or in opposition to the motion. (Doc. 35). In response to the Court's Order, Plaintiff filed a Reply to Defendants' Motion for Summary Judgment. (Doc. 36).

---

constitutional violation, the Court does not reach Defendants' qualified immunity arguments. Saucier, 533 U.S. at 201.

I.   **SUMMARY JUDGMENT STANDARD**

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The Federal Rules of Civil Procedure grants this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact….'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir. 1989). However, the Court is only to "make all *reasonable* inferences in favor of the party opposing summary judgment . . . not to make all *possible* inferences in the nonmoving party's favor." Torjagbo v. United States, 285 Fed. Appx. 615, 619 (11th Cir. 2008) (emphasis in original). Rule 56(e)(2) states that:

> [w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts

> showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., 508 F.3d 641, 647 (11th Cir. 2007) (citations omitted).

In a civil action filed by an inmate, although drawing "all justifiable inferences in [the inmate's] favor," federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

6

Beard v. Banks, 548 U.S. 521, 529-30, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (internal citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 67 L.Ed.2d 686 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. DISCUSSION

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that:(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2)...this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The element requiring a deprivation of a right based on the Constitution or on a federal law is satisfied by a plaintiff establishing that he was deprived of a right inherent in the Constitution or in a federal law or of a liberty interest created by the state that is protected by the due process clause. Meachum v. Fano, 427 U.S. 215, 223-29, 96 S.Ct. 2532,

2538-40, 49 L.Ed.2d 451 (1976); accord Sandin v. Conner, 515 U.S. 472, 487, 115 S.Ct. 2293, 2302, 132 L.Ed.2d 418 (1995).

### A. DUE PROCESS CLAIM

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." Thus, the Constitution is implicated only if a person is deprived of an interest that is in some way protected by the Due Process Clause. In sum, absent the existence of a protected interest, there can be no procedural due process violation. Id., 515 U.S. at 478. ("[T]he Due Process Clause does not protect every change in the conditions of confinement having a substantial impact on the prisoner.").

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. See Id., 515 U.S. at 484; see, e.g., Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance,

8

via statute or administrative policy), and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.; see, e.g., Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); McKune v. Lile, 536 U.S. 24, 39, 122 S. Ct. 2017, 2028 153 L. Ed. 2d 47 (2002) (inmate's transfer to another facility does not implicate a liberty interest, even if it results in the loss of access to vocational, educational, recreational, and rehabilitative programs); see also, e.g., Kramer v. Donald, 286 Fed. Appx 674, 676 (11th Cir. 2008) (prisoner did not state a due process claim because he has no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)(discussing two situations in which liberty interest can arise).

In the instant case, Taylor has failed to establish that he has a protected liberty interest which invokes due process requirements.  He has not alleged nor proffered any facts suggesting that submitting to a haircut would subject him to conditions "so severe that [they] exceed[] the sentence imposed by the court" or would result in an "atypical and significant"

deprivation in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 484.

As noted supra, Taylor contends that in forcing him to get a haircut, Defendants have deprived him of his due process rights. (Doc. 4 at 4, 8, 9; Doc. 36).  Specifically, Taylor asserts that the former version of Rule 102 of the Inmate Handbook provided that "hair should be  no more than one (1) inch long, off the collar and off the ears, side burns no more…", but that the regulation has been changed, and it now speaks in terms of "a proper haircut" and does not require a haircut, nor does it specify how long or short the hair is to be maintained. (Doc. 36 at 3).  Taylor's assertions are without merit because even if the regulation is construed as imposing no requirement for a haircut, it does not create a liberty interest in favor of him such that a violation of the regulation would subject him to "atypical and significant" deprivation in relation to the ordinary incidents of prison life. Sandin, 515 U.S. at 484.  Thus, Defendants are entitled to summary judgment with respect to this claim. Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987).

**B. CRUEL AND UNUSUAL PUNISHMENT CLAIM**

To state a valid Eighth Amendment claim in the context of prison conditions, an inmate must allege that a "prison official acted with 'deliberate indifference' to the inmates' health or

10

safety, a state of mind that can be inferred from the fact that the risk of harm is obvious." Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1991)). A conditions-of-confinement claim has two elements: a sufficiently serious deprivation and prison officials' deliberate indifference to the prisoner's health or safety. Spencer v. Bouchard, 449 F.3d 721, 728 (6th Cir. 2006). While Taylor alleges that forcing him to have his hair cut by a fellow inmate, after threats of violence, constitutes cruel and unusual punishment in violation of the Eighth Amendment, he has not alleged nor shown that he suffered a sufficiently serious deprivation or that Defendants acted with deliberate indifference[4]. In fact, Taylor has not alleged nor shown that in ordering him to get his hair cut, Defendants acted with an improper motive. Rule 102 of the Inmate Handbook contains grooming guidelines which clearly reflect that hair is to be cut off the neck and ears and that the grooming policy was implemented for legitimate "health, identification, and security" measures. (Doc. 1 at 15). Taylor's disagreement with the policy or with Defendants' interpretation of the policy

---

[4] A deprivation is sufficiently serious when it "result[s] in the denial of the minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 302-03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

fails to demonstrate that Defendants acted with deliberate indifference.

Finally, Defendants' alleged use of verbal threats of force to compel Plaintiff to get his hair cut is not actionable as an Eighth Amendment violation. Even if Plaintiff found the alleged threats to be distressful, standing alone, they are not sufficient to establish a constitutional violation. <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1274 n. 1 (11th Cir. 1989) ("...Hernandez's allegation of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats and verbal abuse alone is insufficient to state a constitutional claim."). Because Plaintiff does not allege that any of the Defendants nor the inmate who cut his hair used physical force against him in connection with his haircut, or that he suffered a serious injury in conjunction with his haircut, he has failed to assert an actionable Eight Amendment violation. Thus, his claim must fail.

## CONCLUSION

Based on the foregoing, the Court concludes that Defendants are entitled to summary judgment in their favor on all of Plaintiff's remaining claims. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED** as Plaintiff has failed to state a claim upon which relief can be

granted and that Plaintiff's Complaint be **DISMISSED** with prejudice.

The attached sheet contains important information regarding objections to the Report and Recommendation.

**DONE** this **14th** day of **November, 2012.**

                                               **/s/ SONJA F. BIVINS**
                                      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.  **Objection**.  Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[5] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[5]   Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Opposing party's response to the objection.** Any opposing party may submit a brief opposing the objection within fourteen (14) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3. **Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.